[No. 12879-5-I.  Division One.  July 15, 1985.]

DON KENNEDY, *Appellant*, v. ED RODE, ET AL, *Defendants*, TIME OIL Co., *Respondent*.

*Wendells, Froelich, Power & Lakefish* and *Alan L. Froelich,* for appellant.

*Don Schwendiman,* for respondent.

RINGOLD, J.—Don Kennedy, a real estate broker, appeals the trial court's order of summary judgment dismissing his claim against Time Oil Co. for tortious interference with business relations. We agree with the trial court that a real estate broker's agreement to share a commission with an unlicensed person is contrary to public policy and precludes maintaining this action.

Neil Huntley and Ed Rode had an earnest money agreement to buy a commercial building owned by Yoshio Suzuki and Gary Wilson. Huntley and Rode were unable to arrange financing and sought help from James England, who was a limited partner with Rode in another transaction. England contacted Don Kennedy, a real estate broker.

Kennedy and Rode entered into a commission agreement for the sale or exchange of the building. The agreement provided that Rode would pay a $50,000 commission that would be shared between Kennedy and England, who is not a licensed real estate broker or salesman.[1]

Kennedy's efforts procured Time Oil Co. to finance the sale of the building. Huntley and Rode assigned their interest in the earnest money agreement to Time Oil and received an option to later purchase the building. Time Oil took title to the building. The option to purchase the building expired without being exercised by Huntley and Rode.

Upon learning that Time Oil obtained title to the building, Kennedy attempted to obtain the closing documents from Time Oil in order to pursue his claim for a commission against Huntley and Rode. Time Oil refused to give Kennedy the documents.

Kennedy brought this action against Rode, Suzuki, Wil-

---

[1] Under the agreement, Kennedy's share was $45,000 and England's share was $5,000.

son and Huntley for his commission, and also sued Time Oil for tortious interference with Kennedy's commission agreement and business expectancy from the sale of the building. Rode could not be found and was never served. All the remaining parties save Time Oil were dismissed for various reasons.

Time Oil moved for summary judgment of dismissal which the trial court granted, stating:

It is undisputed that Plaintiff, a licensed broker, entered into an agreement to share a part of his fee with James England, a person who is not a licensed real estate broker or salesman. The court makes the following

CONCLUSIONS OF LAW

1. That Plaintiff's commission arrangement violates RCW 18.85.330 which prohibits a licensed broker from paying any part of his commission or other compensation to any person who is not a licensed real estate broker or salesman.

2. That RCW 18.85.330 is a statute designed to protect the public and is therefore a statement of public policy.

3. Therefore, Plaintiff's Commission Agreement is void and unenforceable.

4. That, as a matter of law, Plaintiff cannot establish the tort of interference with a contract or business expectancy.

Kennedy appeals.

An appellate court engages in the same inquiry as the trial court in a motion for summary judgment. *Wilson v. Steinbach*, 98 Wn.2d 434, 656 P.2d 1030 (1982). Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to prevail as a matter of law. CR 56(c); *Blenheim v. Dawson & Hall, Ltd.*, 35 Wn. App. 435, 667 P.2d 125, *review denied*, 100 Wn.2d 1025 (1983).

■ There are no material facts in dispute. The trial court dismissed Kennedy's cause of action for failing to make out one of the elements of his prima facie case. A basic element of the tort of wrongful interference with a contract or business expectancy is the existence of a valid contractual relationship or business expectancy. *Calbom v.*

*Knudtzon,* 65 Wn.2d 157, 396 P.2d 148 (1964). This is the only element in dispute.

The issue presented here is whether a real estate broker may maintain an action for tortious interference with his commission contract and his business expectancy if the contract violates RCW 18.85.330, which provides in part:

> It shall be unlawful for any licensed broker to pay any part of his commission or other compensation to any person who is not a licensed real estate broker in any state of the United States or its possessions or any province of the Dominion of Canada, or to a real estate salesman not licensed to do business for such broker . . .

■ The first question is whether RCW 18.85, regulating real estate brokers, applies to the commission agreement between Kennedy and Rode. Kennedy argues that the sale of the building was actually a mortgage; therefore, he was not acting as a real estate broker in producing Time Oil. This argument ignores the statutory definition of a real estate broker.

RCW 18.85.010(1) states in part:

> (1) "Real estate broker," . . . means a person, while acting for another for commissions or other compensation or the promise thereof . . . who:
>
> . . .
>
> (b) Negotiates or offers to negotiate, either directly or indirectly, the purchase, sale, exchange, lease, or rental of real estate or business opportunities, or any interest therein, for others;
>
> . . .
>
> (e) Engages, directs, or assists in procuring prospects or in negotiating or closing any transaction which results or is calculated to result in any of these acts . . .

Kennedy assisted in procuring Time Oil, which bought the building or at least became a mortgagee. "[T]he interest of a mortgagee involves an interest in land." 3 R. Powell, *Real Property* § 455 (1984); *see* Black's Law Dictionary 911 (5th rev. ed. 1979). In his transaction with Rode, Kennedy acted as a real estate broker because he assisted in procuring Time Oil, which acquired an interest in land.

Kennedy agreed to share his commission with England in

violation of RCW 18.85.330. Kennedy argues that this violation should not void the commission agreement, because "'a contract which violates a statutory regulation of business is not void unless made so by the terms of the act.'" *Fleetham v. Schneekloth*, 52 Wn.2d 176, 180, 324 P.2d 429 (1958). In *Fleetham*, however, the statutory provision concerned the failure to deliver a copy of a listing agreement and was regulatory only. The statute did not purport to declare public policy. *Fleetham*, at 181.

██ "A contract that is contrary to the terms and policy of a statute is illegal and unenforceable." *Vedder v. Spellman*, 78 Wn.2d 834, 837, 480 P.2d 207 (1971). The licensing of brokers is for the protection of the public. *State v. Waymire*, 26 Wn. App. 669, 614 P.2d 214 (1980); *see also Ellestad v. Swayze*, 15 Wn.2d 281, 289–90, 130 P.2d 349 (1942). RCW 18.85.330 is an additional protection for the public against unlicensed persons acting as agents in real estate transactions. It should be read in conjunction with RCW 18.85.100, requiring that a person be a licensed broker in order to bring suit for compensation as a broker. Because Kennedy's commission agreement contravenes this public policy, it is null and void. *See Springer v. Rosauer*, 31 Wn. App. 418, 641 P.2d 1216, *review denied*, 97 Wn.2d 1024 (1982).

Kennedy maintains that, even if his commission agreement is not enforceable against Rode, he may still bring suit against Time Oil for interference with his business expectancy. He argues that there need not be a valid contract underlying the tort of interference with business relations and that a mere business expectancy is sufficient to support his cause of action. To support this proposition Kennedy relies on *Scymanski v. Dufault*, 80 Wn.2d 77, 491 P.2d 1050 (1971) and *F.D. Hill & Co. v. Wallerich*, 67 Wn.2d 409, 407 P.2d 956 (1965).

While there need not be a legal contract to maintain an action for tortious interference with a business expectancy, there must be a valid expectancy. *Calbom v. Knudtzon, supra*. Kennedy's business expectancy has ripened into a

contract, his commission agreement. He expects no other reward or business opportunity from his transaction with Rode.

In *Scymanski,* the defendant argued that an action for tortious interference with a contract could not be maintained because the contract violated the statute of frauds. The court held it was unnecessary to have an existing enforceable contract if there was a reasonable expectancy of one in the future. *Scymanski,* at 84. The court concluded that in the circumstances of that case it could be expected that the contract would have been reduced to writing absent the interference. *Scymanski,* at 85.

The *Scymanski* case stands for the proposition that there can be interference with a business expectancy prior to the time the expectancy is reduced to an enforceable contract. Any other rule would reward tortfeasors who interfered early in a business relationship. That reasoning is not applicable to the case at bench. Time Oil did not interfere with the execution of a contract between Kennedy and Rode. The commission agreement was the culmination of Kennedy's business expectancy. Nothing further was contemplated by Kennedy or Rode.

In *F.D. Hill & Co. v. Wallerich, supra,* a real estate broker brought suit for tortious interference with his commission agreement. The defendant alleged that the commission agreement violated the statute of frauds. The court reasoned that the statute of frauds defense would not be available to the defendant because he was not a party to the agreement. *Wallerich,* at 412.

The concern in the present case is not with a mere technical defense available only to a party to the contract. Kennedy's commission agreement violates public policy, and any claim arising out of it is tainted by the illegality of the commission agreement and becomes unenforceable. *Sherwood & Roberts–Yakima, Inc. v. Leach,* 67 Wn.2d 630, 636–37, 409 P.2d 160, 14 A.L.R.3d 1411 (1965).

As Kennedy did not have a valid contract or business expectancy, summary judgment was proper. *See Calbom v.*

*Knudtzon, supra.*
We affirm the judgment of dismissal.

WEBSTER, J., and PETRIE, J. Pro Tem., concur.

Review denied by Supreme Court September 20, 1985.