[No. 20654–1–I.   Division One.   December 23, 1987.]

WILLIAM F. GROVES, *Appellant*, v. PROGRESSIVE
CASUALTY, *Respondent*.

*Robert Keefe* and *Walthew, Warner, Keefe, Arron, Costello & Thompson,* for appellant.

*Suzanne E. Cohen* and *DeCourcy & Cohen,* for respondent.

PEKELIS, J.—William F. Groves appeals from an order of the Superior Court confirming an arbitration award which denied him recovery pursuant to the underinsured motorist provision of his motorcycle insurance policy. He contends

that the award is erroneous on its face and that the arbitrators refused to hear evidence pertinent and material to the controversy.

I

On November 1, 1982, Groves was injured when the motorcycle he was driving collided with an automobile driven by Raymond Wahl. Deborah Feeser, a passenger on Groves' motorcycle, was also injured. Wahl had $100,000 of liability insurance with Safeco Insurance Company, while Groves had $25,000 of underinsured motorist (UIM) coverage with Progressive Casualty Insurance Company.

Groves and Feeser brought suit against Wahl for negligence. Feeser eventually settled with Wahl and Safeco for $25,000, reducing the available limits of Wahl's liability insurance to $75,000. Soon thereafter, Wahl gave notice that he would move to amend his answer to assert a counterclaim against Groves. Groves later settled with Wahl and Safeco for $35,000. Groves contends that this settlement was necessitated by Progressive's failure to come to his defense against Wahl's potential counterclaim.[1]

Groves demanded payment from Progressive under his UIM coverage, and Progressive declined to pay. The matter then went to arbitration pursuant to the provisions of the insurance contract. On October 22, 1986, two of the three arbitrators issued a decision denying Groves recovery. The two arbitrators found (1) that a settlement between a claimant and a primary carrier must be reasonable, (2) that a UIM carrier is not liable to a claimant unless the value of the claim exceeds the available limits of primary coverage, and (3) that the settlement between Groves and Wahl was not reasonable and that it did not exceed the available limits of Wahl's liability coverage. The third arbitrator dissented by separate opinion.

Groves moved to vacate the award pursuant to RCW 7.04.160, and Progressive moved to confirm it pursuant to

---

[1]This contention is the basis of a separate action filed by Groves against Progressive for bad faith. It is unclear whether a counterclaim was ever actually filed.

RCW 7.04.150. On December 11, 1986, the trial court confirmed the award, finding that Groves' UIM coverage was not available because his damages were within the available limits of Wahl's liability insurance. Groves thereafter filed this appeal.

## II

■ Groves contends that the trial court erred in denying his motion to vacate the arbitration award. RCW 7.04.160 provides that an arbitration award shall be vacated on any one of five enumerated grounds. In considering a motion to vacate an award, the trial court need only consider whether or not any of the statutory grounds exist. *St. Paul Ins. Cos. v. Lusis,* 6 Wn. App. 205, 208, 492 P.2d 575, 56 A.L.R.3d 687, *review denied,* 80 Wn.2d 1009 (1972). The burden of showing that such grounds exist is on the party seeking to vacate the award. *Keen v. IFG Leasing Co.,* 28 Wn. App. 167, 175, 622 P.2d 861 (1980).

Groves contends that two of the statutory grounds for vacation of an award are applicable to this case. They are: RCW 7.04.160(4), which provides for vacation where "the arbitrators exceeded their powers, or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made"; and RCW 7.04.160(3), which provides for vacation where "the arbitrators were guilty of . . . refusing to hear evidence, pertinent and material to the controversy".

## A

RCW 7.04.160(4) has been interpreted as encompassing cases in which the arbitrators have adopted an erroneous rule of law or have mistakenly applied the law. *See Lent's, Inc. v. Santa Fe Eng'rs, Inc.,* 29 Wn. App. 257, 264–65, 628 P.2d 488 (1981); *Moen v. State,* 13 Wn. App. 142, 143–45, 533 P.2d 862, *review denied,* 85 Wn.2d 1018 (1975). However, the court will not vacate an award under RCW 7.04-.160(4) unless such an error appears on the face of the award. *Lent's,* 29 Wn. App. at 265; *see also Northern State Constr. Co. v. Banchero,* 63 Wn.2d 245, 249–50, 386 P.2d

625 (1963); *Moen,* 13 Wn. App. at 144–45. Furthermore, an award will not be vacated under RCW 7.04.160(4) "unless the court is satisfied that substantial rights of the parties were prejudiced thereby." RCW 7.04.160.

Groves contends that the award is erroneous on its face because it shows that the arbitrators adopted the rule that the settlement between a claimant and a primary carrier must be reasonable. Furthermore, the award appears to show that the arbitrators adopted the rule that a UIM carrier is not liable unless the amount of the settlement exceeds the available limits of the primary coverage.[2] Groves argues that both these rules are contrary to the holding of *Elovich v. Nationwide Ins. Co.,* 104 Wn.2d 543, 707 P.2d 1319 (1985).

In *Elovich,* 104 Wn.2d at 550, the Supreme Court of Washington adopted the "floating layer" theory of UIM coverage. Under this theory, UIM coverage will "float" on top of any recovery the insured receives from other sources. *Elovich,* 104 Wn.2d at 549. The insured who settles with the tortfeasor for less than the limits of the tortfeasor's liability insurance can still collect under his own UIM coverage. *Elovich,* 104 Wn.2d at 553. The amount of his recovery will be the difference between his damages[3] and the amount actually collected from the tortfeasor, up to the limits of the UIM policy. *See Elovich,* 104 Wn.2d at 549.

A simple example, taken from *Elovich,* 104 Wn.2d at 548–49, will serve to illustrate the point. Suppose that X,

---

[2]The award is not entirely clear on this point. It states, first, that a UIM carrier is not liable to a claimant unless the value of his *claim* exceeds the available limits of primary coverage. It then concludes that Progressive is not liable because the settlement between Groves and Wahl was not reasonable, and because the *settlement* did not exceed the available limits of Wahl's liability coverage. The distinction between the value of Groves' claim and the value of his settlement is an important one, as will be shown below.

[3]In order to avoid confusion, we will use the word "damages" throughout to refer to the amount which a person is "legally entitled to recover." RCW 48.22-.030(1). That, is, it refers to the true value of that person's injuries. *See Elovich,* 104 Wn.2d at 549.

the injured person, carries $25,000 of UIM coverage and suffers injuries valued at $50,000. Y, the tortfeasor, carries $30,000 of liability coverage. X and Y settle for $20,000. Under the "floating layer" theory of *Elovich,* X will collect $25,000 under his UIM coverage. That is, he will collect the difference between his damages ($50,000) and the value of the settlement ($20,000), up to the limits of his UIM policy ($25,000).

In *Hamilton v. Farmers Ins. Co.,* 107 Wn.2d 721, 733 P.2d 213 (1987), the court substantially revised the "floating layer" theory of *Elovich.* Relying on the language of RCW 48.22.030(1), the court held that the injured person can recover from his UIM carrier only when the limits of the tortfeasor's liability insurance are less than the injured person's damages. *Hamilton,* 107 Wn.2d at 726–27, 735.[4] Thus, there are two conditions to recovery from a UIM carrier: (1) the injured insured must be legally entitled to recover damages, and (2) his damages must exceed the limits of the tortfeasor's liability insurance. *Hamilton,* 107 Wn.2d at 726–27. If the injured person settles for less than the limits of the tortfeasor's liability insurance, then the UIM carrier is entitled to compute its payments as if those limits had been paid. *Hamilton,* 107 Wn.2d at 728 (citing with approval AGO 13 (1981), at 19). In other words, the UIM carrier is always allowed to credit the full amount of the tortfeasor's available liability insurance against the injured person's damages, even if the injured person recovers less than the full amount from the tortfeasor's insurer. *Hamilton,* 107 Wn.2d at 728.

It is difficult to reconcile *Elovich* and *Hamilton.* Whereas *Hamilton* allows the UIM carrier to credit the full amount of the tortfeasor's available liability insurance against the injured person's damages, *Elovich* permits the UIM carrier

---

[4]The principle is actually stated somewhat more broadly in *Hamilton.* In order to recover from a UIM carrier, the injured person's damages must exceed the limits of liability under "all other applicable insurance policies." *Hamilton,* 107 Wn.2d at 727. In the case sub judice, there is only one such policy, that of the sole tortfeasor.

to credit only the amount actually collected from the tortfeasor's insurer. *Compare Hamilton,* 107 Wn.2d at 728 *with Elovich,* 104 Wn.2d at 549. The effect of this distinction can be seen by returning to the example taken from *Elovich,* 104 Wn.2d at 548–49, discussed above. Under the holding of *Hamilton,* X will collect $20,000, not $25,000, under his UIM coverage. That is, he will collect the difference between his damages ($50,000) and the limits of the tortfeasor's liability insurance ($30,000).

Under the "floating layer" theory of *Hamilton,* neither the amount of Groves' settlement nor its reasonableness is of any significance in determining whether or how much Groves can recover under his UIM policy. Rather, what matters is (1) Groves' *damages, i.e.,* the true value of his injuries, and (2) the available limits of Wahl's liability insurance. The arbitrators, however, adopted a different rule. They concluded that Groves was not entitled to recovery because his settlement was not reasonable and because his *settlement* did not exceed the available limits of Wahl's liability insurance. Thus, the award shows on its face that the arbitrators adopted an erroneous rule of law.[5]

Nevertheless, the award will not be vacated unless it can be shown that Groves was prejudiced by the error. RCW 7.04.160. The available limits of Wahl's liability insurance were $75,000. One of the arbitrators valued Groves' damages at $60,000, and another valued them at $75,000. Thus, two of the three arbitrators found that Groves' damages did *not* exceed the available limits of Wahl's liability insurance. Had those arbitrators correctly applied the rule of *Hamilton,* they would still have decided that Groves was not entitled to recover under his UIM policy. Groves was not prejudiced merely because the arbitrators reached the correct result based on an erroneous rule of law.

---

[5]On the other hand, the trial judge who confirmed the award did not make the same error. He found that Groves' UIM coverage was not available because Groves' *damages* were within the available limits of Wahl's liability insurance.

## B

Groves also contends that the award should have been vacated under RCW 7.04.160(3) because the arbitrators refused to hear evidence pertaining to the reasonableness of the settlement in light of Progressive's alleged bad faith. However, as we have already said, the reasonableness of the settlement was of no significance in determining whether or how much Groves could recover under his UIM policy. Therefore, the evidence in question was not "pertinent and material to the controversy", and it does not provide a basis for vacating the award under RCW 7.04.160(3).

Affirmed.

RINGOLD, A.C.J., and SWANSON, J., concur.

Review denied by Supreme Court April 5, 1988.